UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEM ZIMMERMAN,                    ) | |
| ) | |
| Plaintiff(s),                         ) | |
| ) | |
| vs.                                   ) | Case No. 4:22-cv-1356-SRC |
| ) | |
| MOLLY BRAVO,                          ) | |
| ) | |
| Defendant(s).                         ) | |

### **Memorandum and Order**

This matter is before the Court on the motion of Plaintiff Matthew Zimmerman, an inmate at Eastern Reception Diagnostic and Correctional Center (ERDCC), for leave to commence this civil action without prepayment of the required filing fee. Doc. 2. For the reasons explained below, the Court grants Zimmerman's motion to proceed in forma pauperis, assesses an initial partial filing fee of $1.00, and dismisses Zimmerman's federal claims pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court declines to exercise supplemental jurisdiction over any of Zimmerman's state law claims brought by plaintiff. *See* 28 U.S.C. § 1367(c)(3).

### **28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Zimmerman did not submit a prison account statement with his motion for leave to commence this civil action without payment of the required filing fee. Zimmerman will, therefore, be required to pay an initial partial filing fee of $1.00, an amount that is reasonable based upon the information before the Court. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If Zimmerman is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel, *see McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Zimmerman brings this action pursuant to 42 U.S.C. § 1983 against the prosecutor in his state criminal case, Molly Bravo. *See State v. Zimmerman*, No. 19JE-CR03650-01 (23rd Judicial Circuit, Jefferson County Court). He brings this action against Bravo in her individual capacity.

Zimmerman alleges Bravo "systemically orchestrated prosecutorial misconduct by knowing[ly] using perjured testimony and knowing suppression of favorable evidence…" Doc. 1 at p. 4. He asserts that Bravo violated the "fair cross-section of the community requirement," with respect to seating a jury. *Id.* Zimmerman additionally alleges that Bravo engaged in *Brady* violations by intentionally suppressing texts and phone records that could have shown that he was actually innocent of the crime for which he was charged. *Id.* Last, Zimmerman asserts that Bravo "abused her office and position in order to cause [him] substantial injury" that caused his "wrongful conviction." *Id.*

3

Zimmerman asks that the Court charge Bravo with "Jenck[s] Act violations." *Id.* He also alleges that Bravo should be liable for "malicious prosecution." *Id.* For relief, Zimmerman seeks release from confinement and reversal of his conviction. *Id.*

### Zimmerman's State Criminal Charges

On December 4, 2019, Bravo filed a probable cause statement and a criminal complaint against Zimmerman charging him with Class A domestic assault in the first degree in Jefferson County Court, Missouri. *See State v. Zimmerman*, No. 19JE-CR03650-01 (23rd Judicial Circuit, Jefferson County Court). The probable cause statement, filled out by Deputy D. Rosner of the Jefferson County Sheriff's Department, indicated that on or about November 16, 2019, Rosner had responded to a disturbance between Zimmerman and his wife at 7030 State Road BB Cedar Hill, Missouri. The facts, as outlined in the probable cause statement, were as follows:

> Upon my arrival I located a hysterical female subject with obvious facial injury's [sic] running in the roadway. The female who was later identified as . . . reported that her husband Matthew Zimmerman had "beat" her and crashed her car. . . stated while she was driving her vehicle Matthew punched her in the head several times to the point where she could not see out of her eye. . . stated as she turned from State Highway 30 onto Highway BB Mathew grabbed the steering wheel of the car and purposefully attempted to crash the car into the ditch. . . .advised Matthew told her, "I'll demolish you. . . . stated after the car veered off of the roadway, she attempted to correct the vehicle, but Matthew was preventing her from doing so. . . .advised after the vehicle crash, she attempted to run away from Matthew, but he chased her. . . . stated after she began running, she does not remember what happened. I observed . . .to have severe swelling on the left side of her face, the swelling started from the area of her temple and extended past her eye and to her lips and nose region. I observed the swelling to cause. . . eye to be forced closed. . . .advised she had severe jaw and head pain. I observed the vehicle . . .was operating to have multiple areas with blood on them as well as spatter on the driver's side front window. Matthew and . . .are in an ongoing relationship of an intimate nature.

A warrant was issued for Zimmerman's arrest on December 5, 2019. An amended complaint was filed on March 11, 2020, charging Zimmerman with armed criminal action, Class A domestic assault in the first degree and Class B domestic assault in the first degree. *See State v. Zimmerman*, No. 19JE-CR03650-01 (23rd Judicial Circuit, Jefferson County Court).

An information was filed on September 29, 2020, charging Zimmerman with felony armed criminal action, Class A domestic assault in the first degree and Class B domestic assault in the first degree. *See State v. Zimmerman*, No. 19JE-CR03650-01 (23rd Judicial Circuit, Jefferson County Court). An amended information was filed on June 3, 2021, with the same charges, however Zimmerman was charged as a prior and persistent offender. *Id.*

After a two-day jury trial, the jury found Zimmerman guilty of Class A domestic assault in the first degree on March 4, 2022. *See State v. Zimmerman*, No. 19JE-CR03650-01 (23rd Judicial Circuit, Jefferson County Court). On April 19, 2022, Zimmerman was sentenced to eighteen (18) years' imprisonment in the Missouri Department of Corrections. *Id.*

## Discussion

Zimmerman brings this action against Bravo, a prosecutor in Jefferson County, Missouri, in her individual capacity. For the following reasons, his federal claims against Bravo are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). To the extent Zimmerman is bringing state-law claims for relief, the Court will dismiss those claims, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

Zimmerman's individual-capacity claims against Bravo, brought pursuant to 42 U.S.C. § 1983, are subject to dismissal. Zimmerman alleges that Bravo is a prosecuting attorney for the State of Missouri. As noted above, Bravo filed domestic assault charges, as well as an armed criminal action charge against him, and she prosecuted those charges in a jury trial held on March 3 and 4th, 2022. Zimmerman contends the charges were a result of malicious prosecution, and he seeks release from confinement because of Bravo's actions.

The doctrine of prosecutorial immunity bars Zimmerman's claims against Bravo because prosecutors have absolute immunity from damages claims arising from acts performed within their official authority. *See Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987). "Prosecutors

5

are protected by absolute immunity from civil liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-71 (1993); *see also Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government."); *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) ("Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process."). There is no question that Bravo's filing of assault charges against Zimmerman was an action intimately associated with the judicial process. All the acts Zimmerman complains of were prosecutorial functions and therefore are protected under absolute immunity.

To the extent Zimmerman alleges that Bravo acted in bad faith, his assertions do not save his claims for relief. "Allegations of improper motive in the performance of prosecutorial functions will not defeat immunity." *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 899 (E.D. Mo. Jan. 17, 2017); *see also Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976) (holding that there is no fraud exception to prosecutorial immunity, and it is better to leave wrongs committed by dishonest officers "unredressed" than to subject the honest to the "constant dread of retaliation" (quoting *Gregoire v. Biddle*, 117 F.2d 579, 581 (2d Cir. 1949)). Moreover, "[p]ublic policy dictates that prosecutors be immune from common-law suits for malicious prosecution." *Jackson v. Tyson*, 2008 WL 5377877, at *4 (E.D. Mo. Dec. 19, 2008) (quoting *Imbler*, 424 U.S. 409, 422 (1976)). Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a

6

prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013); *see also Woodworth*, 891 F.3d at 1089 (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence"). Without absolute immunity, the threat of civil rights suits would undermine the performance of a prosecutor's duties.

Based on the allegations in the complaint, Bravo has absolute immunity, as there is no indication that Bravo acted as anything other than an advocate for the State of Missouri. Thus, Zimmerman's claims against Bravo are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

To the extent Zimmerman can be understood to seek relief pursuant to 28 U.S.C. § 2254, this case is subject to dismissal because there is no indication Zimmerman has exhausted his state-court remedies with respect to his claims for habeas corpus, or for release from confinement. Before a Court can grant federal habeas relief, a person in state custody must exhaust available state remedies. 28 U.S.C. § 2254(b)(1). Courts ordinarily do not consider state remedies exhausted if an individual may effectively present his claim to the state courts by any currently available and adequate procedure. There is no indication in this case that Zimmerman has pursued his state-court remedies through post-conviction (Rule 24.035) proceedings and appeals. As such, Zimmerman's request for release from confinement is premature. *See Duncan v. Walker*, 533 U.S. 167, 178-79 (2001) ("[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment").

To the extent Zimmerman asks this Court to review the state-court's decision in his state criminal case, the Court denies such request. Except for federal-habeas-corpus petitions, federal district courts lack subject-matter jurisdiction over challenges to state-court judgments. *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970) (Lower

7

federal courts may not sit in review of a state court decision.); *see also Postma v. First Fed. Sav. & Loan*, 74 F.3d 160, 162 (8th Cir. 1996).

As Zimmerman has stated no federal cause of action, the Court declines to exercise jurisdiction over supplemental state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Further, as the Court dismisses this action, the Court denies Zimmerman's motion for appointment of counsel as moot.

Accordingly, the Court grants [2] Plaintiff's motion to proceed in forma pauperis and orders that Plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

The Court dismisses this action without prejudice for failure to state a claim and/or because it is legally frivolous subject to 28 U.S.C. § 1915(e)(2)(B).  The Court further orders that, to the extent Plaintiff has brought Missouri state law claims, the Court declines to exercise supplemental jurisdiction over such claims, *see* 28 U.S.C. § 1367(c)(3), and dismisses these claims, without prejudice.

Additionally, the Court denies [3] Plaintiff's Motion for Appointment of Counsel as moot and certifies that an appeal from this dismissal would not be taken in good faith.  A separate Order of Dismissal accompanies this Memorandum and Order.

Dated this 2nd day of February, 2023.

                                                    STEPHEN R. CLARK
                                                    CHIEF UNITED STATES DISTRICT JUDGE